UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



------------------------------------------------------------x
:
CAPSTONE LOGISTICS HOLDINGS, INC.,    :
CAPSTONE LOGISTICS, LLC, and PINNACLE  :
WORKFORCE LOGISTICS, L.L.C.,         :    Civil Action No. 17-cv-4819
:
              Plaintiffs,       :
:
    - against -              :    **ORDER FOR**
:    **PERMANENT INJUNCTION**
PEDRO NAVARRETE, DAVID         :
POFFENBERGER, STEVEN WILLIS, MARIO  :
ROJAS, and HUMANO, LLC,          :
:
              Defendants.      :
:
------------------------------------------------------------x

**WHEREAS**, on June 23, 2020, this Court entered a Memorandum Decision and Order (the "June 23, 2020 Order", ECF No. 471), which, among other relief, granted summary judgment in favor of Plaintiffs Capstone Logistics Holdings, Inc., Capstone Logistics, LLC, and Pinnacle Workforce Logistics, L.L.C. (collectively, "Capstone" or "Plaintiffs") and against Defendants Pedro Navarrete, David Poffenberger, Steven Willis, Mario Rojas, and Humano, LLC (collectively, the "Defendants") on Plaintiffs' claims for breach of contract, misappropriation of trade secrets, unfair competition, breach of fiduciary duty, tortious interference, and copyright infringement;

**WHEREAS** the Court found that Plaintiffs have demonstrated that Defendants have utilized Plaintiffs' confidential and trade secret information to acquire business from, and compete with, Plaintiffs by soliciting Plaintiffs' customers and employees, both prior to and after the Court's imposition of a preliminary injunction in this matter, in a knowing violation of enforceable restrictive covenants, and statutory, fiduciary, and common law obligations to Capstone (ECF No. 441, at 6);

**WHEREAS**, in light of the Court's findings that Defendants misappropriated Plaintiffs' trade secrets (ECF No. 441, at 8-9), that "Defendants have never fully complied with [their] noncompetition and non-solicitation obligations," (ECF No. 441, at n.4), and to ensure "Plaintiffs are protected from past or future injury that could potentially result from Defendants' misuse of any confidential information that they may possess or about which Plaintiffs may not be aware," (ECF No. 441, at 22), this Court further ordered that "Defendants are permanently enjoined from directly or indirectly accessing, using, disclosing, disseminating, or otherwise misappropriating any of Plaintiffs' confidential and proprietary information and trade secrets, including but not limited to, Plaintiffs' MobilTrak technology," (ECF No. 441 at 2-3); and

**WHEREAS**, following Defendants' appeal from the June 23, 2020 Order, the U.S. Court of Appeals for the Second Circuit found "no error in the District Court's determination that the [Defendants] misappropriated [Capstone's] trade secrets and therefore affirm[ed] the entry of a permanent injunction," and further that "the enjoined parties in this long-running case are fully on notice of the trade secrets and other confidential information that is the subject of the injunction," but as a "ministerial matter," directed this Court to enter its permanent injunction order in a "separate document that meets the requirements of [Fed. R. Civ. P.] 65(d)," including by, "among other means, clearly and fully listing the conduct and acts to be restrained, … and the reasons therefor, and also clearly identifying the order as a permanent injunction," (ECF No. 477 at 5-7);

**NOW THEREFORE,** in support of this Court's entry of the permanent injunction order, set forth below, this Court finds as follows:

1.     As stated in the June 23, 2020 Order, "[t]he record is full of evidence that the

Individual Defendants wrongfully retained and misused Capstone's trade secrets and confidential

information in furtherance of Humano's business." (ECF No. 441, at 8.)

Specific examples in the record or previously found by this Court, include:

a.     On January 20, 2017, Defendant Poffenberger ("Poffenberger") forwarded confidential pricing information relating to each of Capstone's customer sites to his personal email account. (ECF No. 353, ¶¶ 73, 221.)

b.     In January 2017, Poffenberger accessed from Capstone's private database confidential contact information of each Capstone employee with access to its intranet, as well as information relating to all of the revenues, equipment fees, employee pay and other financial information relating to a customer site. (*Id.* at ¶¶ 74, 221.)

c.     Poffenberger retained and converted to Word a copy of Capstone's confidential contract with DPI after he left, which Defendant Navarrete used to prepare a proposed contract with DPI. (*Id*. at ¶ 221.)

d.     Poffenberger retained and used Capstone files to solicit DPI. Before Poffenberger's last day as a Capstone employee, on March 10, 2017, Poffenberger shared a Capstone document entitled "DPI Prices December 2010.xlsx" from his personal email account with Chris Erklenz of DPI. A month later, on March 31 2017, Poffenberger (while no longer with Capstone) sent to DPI, at Erklenz's request, a copy of Capstone's contract with DPI from his personal email account. (*Id.* at ¶¶ 75-76, 221.)

e.     After the TRO was entered, Defendant Poffenberger was ordered to return a USB drive to Capstone containing approximately 3,700 files, including many confidential Capstone files relating to key customers, which he inserted into his Humano computer. (*Id*. at ¶¶ 76, 221.)

f.      A forensic investigation of Poffenberger's computer revealed that in April 2017, several weeks after leaving Capstone, Poffenberger used a USB drive to access a confidential Capstone "Focus Report" containing confidential customer financial information. (*Id.* at ¶¶ 82, 221.) A Focus Report, accessible only by Capstone employees at a director level or above, are weekly spreadsheets containing a week-by-week snapshot of Capstone's customer accounts, broken down by individual customer and customer site. (ECF No. 286, ¶ 82.)

g.     Poffenberger, Willis, Valentine, and Rojas all started working for Humano before their respective departures, while still having access to Capstone's trade secret information up until the last days of employment. (*Id.* at ¶¶ 69-74, 85-87, 90-91, 221.) Indeed, as part of an email distribution network of senior personnel, they each regularly received reports and real time

information relating to Capstone's customers and current financial performance. (Tomcho Decl. ¶¶ 72, 86, 92.)

h.  Poffenberger admitted to transferring his contact list before leaving Capstone. (ECF No. 353 at ¶ 221; Poffenberger Dep. I at 232:12-15.)

i.  After joining Humano, Rojas connected a USB drive containing confidential files relating to Capstone's customers, financials, and payroll to his computer and viewed two Capstone files related to UNFI. (ECF No. 353 at ¶ 221; Vaughn Decl. ¶ 15; Rojas Dep. 126:1-127:1.)

j.  In June of 2017, O'Neill solicited Capstone employees at a DPI site knowing the site managers' exact salaries and the warehouse associates' wages for the previous weeks, which is confidential information she improperly obtained. (ECF No. 353 at ¶¶ 104, 221.)

k.  Valentine forwarded a trove of Capstone Excel payroll templates containing specific wage and hour information for dozens of Capstone employees to Sarah O'Neill and Carolyn Cook. (*Id*. at ¶¶ 117, 221.)

l.  The training guide prepared by Valentine for both MobilTrak and Genisis are virtually identical, revealing they were copied from Capstone's files. (*Id*. at ¶¶ 158, 221.)

m.  On June 10, 2017, Rojas sent an email with Navarrete and Poffenberger attaching his "risk assessment" of UNFI site managers, based on his experience as a Capstone employee and management of the UNFI relationship on Capstone's behalf. (*Id*. at ¶¶ 92, 221.)

n.  Defendants used the MobilTrak documentation and code to develop Genisis. (*Id*. at ¶¶ 158, 162, 221.)

2.  In addition, this Court found that Defendants wrongfully retained, misappropriated, and copied Capstone's files and source code relating to Capstone's MobilTrak technology (hereinafter, "MobilTrak IP") in furtherance of Humano's business and Humano's development of a competing software platform called Genesis. (ECF No. 353 at ¶¶ 139-160, 221; ECF No. 441, at 14-19). The MobilTrak IP includes the source code to MobilTrak ("MobilTrak", covered by U.S. Copyright Registration No. TXu 2-100-698). The MobilTrak IP also includes documents relating to the use and development of MobilTrak, including "MobilTrak Documentation" (covered by U.S. Copyright Registration No. TXu 2-100-548), "MobilTrak 2.0 Overview" (covered by

U.S. Copyright Registration No. TXu 2-100-550), and MobilTrak Training (covered by U.S. Copyright Registration No. TXu 2-100-551).

3.      This Court further found that the documentation for the back-office applications of both the MobilTrak and Genesis is virtually identical, and that "many of the same sample screenshots used in the documentation are identical. Perhaps most notably, a side-by-side comparison of the MobilTrak and Genesis source codes indicate that there are numerous instances of verbatim lines of code and identical errors throughout the code." (ECF No. 441, at 16, citing ECF No. 353 at ¶¶ 157-60).   And as previously stated by this Court, "[i]t is also clear that Defendants are responsible for the infringement of MobilTrak technology" given Defendants' use of virtually identical documentation, Defendants' knowledge that "individuals who were working on Genesis—who previously worked on the creation of MobilTrak—had access to and were capable of copying MobilTrak," and "not checking on the program to ensure that there was no infringement on any copyright."  (ECF No. 441, at 18).

4.      With regard to Defendant Willis, as stated in the Court's June 23, 2020 Order, "This Court has previously found that Defendant Willis began working for Humano before his last day at Capstone, (ECF No. 353 at ¶ 85), and that he worked to intentionally solicit Capstone clients for Humano, (*see id.* at ¶¶ 85-88)." (ECF No. 441, at 8 n.9). This Court further stated that, "Due to the circumstantial evidence that Defendant Willis misappropriated trade secrets—*i.e.*, that he directly tried to poach Capstone's clients, had access to confidential Capstone information while doing so, and created a spreadsheet that likely was based off of this information—as well as Defendants' failure to allege any material facts in dispute, except to make the blanket assertion that Plaintiffs allege 'complete fabrications,' (Opp'n to Mot. For Summ. J. at 13-14), it is a reasonable conclusion that Defendant Willis misappropriated Capstone's confidential information." (*Id.*)

5.      This Court thus finds, again, as already affirmed by the Court of Appeals, that a permanent injunction is necessary to protect Plaintiffs from "future injury that could potentially result from Defendants' misuse of any confidential information that they may possess or about which Plaintiffs may not be aware." (ECF No. 441 at 22.)  Plaintiffs have established a success on the merits of their claims and that further loss or misuse of Capstone's trade secrets or confidential information will cause irreparable injury, including loss of customer relationships and good will.

For the reasons state above, summarize in the October 25, 2018 Findings of Fact and Conclusions of Law, and the June 23, 2020 Order, **IT IS HEREBY ORDERED**, as follows:

I.      Defendants, and all persons and/or entities acting on their behalf, for their benefit, or in active concert or participation with them (including any affiliates, agents, representatives, associates, employees, and/or independent contractors) are permanently ENJOINED from, directly or indirectly, accessing, using, disclosing, disseminating, or otherwise misappropriating any of the following trade secrets or other confidential or proprietary information that belongs to Capstone:

        a.     all contracts between Capstone and its customers, and the customer-specific details contained therein, including rebate percentages, backhaul and logistics pricing, and other pricing and rate information;

        b.     all data compiled internally by Capstone concerning its customers and operational performance, including confidential customer financial information, customer lists, and customer sites including site-level metrics, such as reports of financial information known as "Focus Reports";

        c.     all Capstone files or information concerning the development and use of MobilTrak, including the MobilTrak IP;

        d.     all non-public pricing information, profit margins, pay models, rebates, backhaul rates, carrier pricing information, cost-per-unit pricing model, staggered pricing structures, duration of pricing arrangements, projections, finances, prices per load, and the methodology employed by Capstone to calculate the foregoing, such as pro formas.

        e.     confidential documents identifying Capstone employee personal identifiable information, compensation, wage history, signing bonuses, and associate pay models;

        f.     pitch proposals prepared by Capstone for prospective customers;

g.   all Capstone files or information concerning growth, business development initiatives, marketing plans, and competitive strategies;

h.   all Capstone files or information regarding its distribution centers, proprietary technology and technology infrastructure, carrier information, the years of data compiled or acquired by Capstone about the industry, and non-public information relating to Capstone's business practices; and

i.   all Capstone files or information concerning research and development into new workforce technology platforms.

II.   Plaintiffs may pursue future violations of the injunction should any occur.

III.   Willful violation of this Order for Permanent Injunction or any other of this Court's orders may subject any person who commits such an act to sanctions for contempt of this Court. Any violation of this Order for Permanent Injunction will result in immediate issuance of an order to show cause for service on the violator, who after appropriate hearings and findings, will be dealt with according to the sanctions provided by law.

IV.   This Court shall retain jurisdiction of this action for all purposes, including without limitation, all proceedings involving the enforcement of this Order and Permanent Injunction.

V.   Electronic service of this Order on the Defendants' counsel shall be deemed as providing Defendants with actual knowledge of the terms of this Order for enforcement purposes.

Dated: New York, New York
          March 4, 2021

SO ORDERED.

_George B. Daniels_
GEORGE B. DANIELS
United States District Judge